* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms with modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between Plaintiff and Defendant-Employer on July 2, 2004. *Page 2 
3. The carrier liable on the risk is Penn National Insurance Company.
4. The Pretrial Agreement, Industrial Commission forms and Plaintiff's medical records were stipulated into evidence.
 ISSUES
Issues for determination:
1. Did Plaintiff sustain a compensable injury to her back on or about July 2, 2004?
2. If so, to what workers' compensation benefits is Plaintiff entitled?
3. Is Plaintiff entitled to reasonable attorney fees pursuant to N.C. Gen. Stat. § 97-88.1 and Rule 802?
4. Is Plaintiff's claim barred for late notice pursuant to N.C. Gen. Stat. § 97-22?
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 35 years old, having a date of birth of February 22, 1971. Plaintiff obtained her General Equivalency Diploma in 2005. Plaintiff also enrolled in a few teaching classes at Lenoir Community College. Plaintiff has a vocational history of working at convenience stores and restaurants prior to her employment with Defendant-Employer.
2. Defendant-Employer employed Plaintiff in December 2000, to run a hot stamping machine that stamped logos onto tie hooks. In the stamping department of Defendant-Employer's plant, Plaintiff's duties included placing tie hooks in a nest plate under a hot stamping machine that would imprint logos on them, stacking the stamped hooks, addressing the *Page 3 
boxes to various neckwear manufacturers, and shipping out the imprinted tie hooks. On February 24, 2004, while carrying out these duties, Plaintiff's right middle finger became caught between the nest plate and its base as the nest plate began to rotate. Plaintiff sustained a partial amputation of the finger that was revised in surgery by Dr. Max Kasselt.
3. According to the hearing testimony of both Plaintiff and Mr. Morris Barbee, co-owner of Defendant-Employer, Plaintiff immediately reported her finger injury to her supervisor, prompt medical attention was sought and Defendants paid all medical bills.
4. As Plaintiff did not retain full use of her finger after the injury, she was switched into Defendant-Employer's injection molding department in early March 2004, where her duties included moving polymer in barrels, putting the polymer inside the machines for the molding of tie hooks, and moving and stacking boxes for shipping. According to Plaintiff's hearing testimony, the barrels of polymer weighed between 200 and 400 pounds. Mr. Barbee estimated, however, that the barrels averaged in weight between 75 and 125 pounds. Plaintiff's co-worker, Crystal Bell, testified that the barrels were easy to move. The Full Commission gives greater weight to Mr. Barbee's estimates of the weight of the barrels of polymer.
5. Plaintiff testified that on July 2, 2004, while moving a barrel of polymer onto a dolly, she felt a "pull" in the lower left portion of her back. She testified that she reported the injury to her supervisor, Andrew Turik, who advised her not to move any more barrels and that he would move them for her. Plaintiff also testified that she informed Mr. Barbee of her injury that same day when he questioned why Mr. Turik was moving the barrels. Plaintiff further testified that she was not given any paperwork to fill out, she did not seek medical attention and she did not file a claim with the Industrial Commission at that time as she thought her back would get better. *Page 4 
6. Contrary to Plaintiff's testimony, both Andrew Turik and Morris Barbee testified that Plaintiff never reported a back injury to either of them on July 2, 2004, or at any time thereafter. According to their testimony, as well as that of co-workers Crystal Bell and Lilly Gwen Jarman, Plaintiff had back problems throughout her employment with Defendant-Employer that were "common knowledge" around the workplace. Defendants' witnesses also testified that Plaintiff never attributed her back problems to work and never reported a specific traumatic event.
7. The Full Commission gives greater weight to Defendant-Employer's evidence that they did not learn of Plaintiff's claim of a work-related back injury until she filed her claim with the Industrial Commission in January 2005.
8. Plaintiff's co-worker, Ms. Jarman, testified that in November 2004, she told Plaintiff she had hurt her back lifting her child at home. According to Ms. Jarman, Plaintiff told her that she should claim she hurt her back at work so that she could get workers' compensation benefits for her injury. Ms. Jarman also testified that Plaintiff told her that after receiving the Christmas bonus in December, Plaintiff would be quitting her job. Ms. Jarman's testimony is found to be credible.
9. Multiple medical providers saw Plaintiff after July 2, 2004, for follow up treatment of her right finger injury. Plaintiff never reported any back pain to Dr. Max Kasselt or Dr. Richard Huberman on August 6, 2004, or to Dr. George Edwards, Jr., on October 13, 2004, despite her testimony that she was experiencing progressively worsening back pain during this time frame.
10. Plaintiff continued to work her normal job at normal hours from July 2, 2004, until December 3, 2004, at which time she received a Christmas bonus of $150.00, and quit her *Page 5 
job with Defendant-Employer. Thereafter, Plaintiff presented to the Emergency Room of Lenoir Memorial Hospital on December 5, 2004, where according to hospital records, she reported back pain since starting a new job with Defendant-Employer, and that the pain had gotten worse the preceding day. This is the first documented evidence in medical records indicating that Plaintiff attributed her back pain to her employment with Defendant-Employer. She was diagnosed with back strain and instructed to follow up with Dr. Huberman if her condition did not improve.
11. Following Plaintiff's Emergency Room visit on December 5, 2004, she presented to Dr. Mark Dumas on April 21, 2005, with back pain, alleging a work incident in July 2004. Dr. Dumas diagnosed Plaintiff with lumbago and recommended that she undergo an MRI of her lumbar spine. An MRI was performed on April 25, 2005, which revealed foraminal encroachment in the L5-S1 foramen, and a surgical evaluation with Dr. Barry Katz was recommended.
12. Dr. Katz first saw Plaintiff on May 13, 2005, at which time she presented with symptoms of left lumbar radiculopathy, which she described as starting in July 2004, while doing heavy lifting at work. After his review of Plaintiff's MRI, Dr. Katz discussed treatment options with Plaintiff. Dr. Kratz performed a lumbar diskectomy and decompression of Plaintiff's L5-S1 on June 3, 2005. Dr. Katz continued to provide follow-up treatment of Plaintiff through the summer and fall of 2005. Plaintiff initially reported an improvement in her pain after surgery. However, in August 2005, Plaintiff reported an increase in leg pain. At her September 2005 visit, Plaintiff was again complaining of back pain along with leg pain. Dr. Katz recommended another MRI to try to determine from where the pain was coming. The MRI was negative. Plaintiff elected to undergo epidural steroid injections, which provided some relief. *Page 6 
13. During his deposition testimony, Dr. Katz opined that the act of moving a 200 to 400 pound barrel "can" cause a herniated disk such as that found on Plaintiff's lumbar MRI. Upon cross-examination Dr. Katz admitted that such a herniation can be caused by a degenerative process in the absence of any trauma and that he could not distinguish based on Plaintiff's MRI whether her herniation was caused by trauma or whether it developed over time. He also admitted that his positive opinion on the issue of whether Plaintiff's alleged lifting injury caused her current back condition was based on timing.
14. Plaintiff's testimony that she injured her back on July 2, 2004, while moving a barrel of polymer onto a dolly is not found to be credible.
15. Based on the greater weight of the evidence, Plaintiff did not sustain an injury arising out of and in the course of her employment on or about July 2, 2004, as a direct result of the work assigned to her by Defendant-Employer.
16. As of Plaintiff's last visit with Dr. Katz on December 8, 2005, Dr. Katz testified that she was "doing great" and was released from his care to return as needed. Dr. Katz further testified that Plaintiff would retain some permanent impairment to her back as a result of the surgery but that he would need to see her again to determine the percentage. As of this last visit, Dr. Katz opined that Plaintiff could return to some type of work but would need a Functional Capacity Evaluation before he would address work restrictions.
17. Plaintiff has not returned to Dr. Katz since December 8, 2005. Plaintiff has not sought employment with any employer since leaving Defendant-Employer's employ in December 2004.
18. Plaintiff testified that she followed up her care with Dr. Dumas and he referred Plaintiff to Greenville Pain Management due to continued pain. As of the date of hearing before *Page 7 
the Deputy Commissioner, Plaintiff remained out of work and under the care of Dr. Dumas and Greenville Pain Management.
19. Plaintiff filed a Form 18 notice of injury with the Industrial Commission on January 21, 2005. Plaintiff testified that the reason she did not provide earlier written notice of her work injury and claim is because she did not believe her injury was very significant. Such a contention is inconsistent with her further claim that she needed assistance in performing her work due to her claimed back injury. The Full Commission does not find Plaintiff's excuse credible. Plaintiff had an earlier work injury and knew that the workers' compensation process required a prompt report of any work injury. Mr. Barbee had informed her of this requirement.
20. Plaintiff had an average weekly wage of $213.20.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove that she sustained a compensable injury to her back arising out of and in the course of her employment with Defendant-Employer on or about July 2, 2004, as a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff failed to follow the notice of injury requirements of N.C. Gen. Stat. § 97-22, and failed to give a reasonable and credible excuse for such failure. However, the issue of whether Plaintiff's claim is time barred is moot, as Plaintiff's claim is not found to be compensable. N.C. Gen. Stat. § 97-22.
 * * * * * * * * * * * *Page 8 
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is DENIED.
2. Each side shall bear its own costs.
This the __ day of May 2007.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/________________ DIANNE C. SELLERS COMMISSIONER